Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Megan E. Ryan (SBN 264922)
mryan@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Jonathan E. Gertler (SBN 111531)
jon@chavezgertler.com
Christian Schreiber (SBN 245597)
christian@chavezgertler.com
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA 94941
Tel: (415) 381-5599
Fax: (415) 381-5572

Attorneys for Plaintiffs

*(additional attorneys listed on next page)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERICO VILCHIZ VASQUEZ, JESUS VILCHEZ VASQUEZ, FRANCISCO DOMINGO CLAUDIO, ADA CAÑEZ, EMIGDIO MENDEZ, and CANDELARIA HURTADO for themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>USM, INC. dba USM SERVICES, INC., a Pennsylvania Corporation; Ross Stores, Inc. dba ROSS DRESS FOR LESS, a Delaware Corporation; ROSS STORES, INC. dba dd's DISCOUNTS, a Delaware Corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: CV-13-05449-JD<br><br>CLASS ACTION<br><br>**DECLARATION OF DAVID BRESHEARS, CPA/CFF**<br><br>Hon. James Donato<br><br>Date: December 3, 2014<br>Time: 9:30 a.m.<br>Location: Courtroom 11, 19th Floor<br><br>Trial: March 23, 2015 |

Paul Cohen (SBN 148371)
Joanna Shalleck-Klein (SBN 275686)
jshalleck-klein@legalaidmarin.org
Daniel R. Weltin, Of Counsel (SBN 226600)
drweltin@weltinlaw.com
LEGAL AID OF MARIN
30 North San Pedro Road, Ste. 220
San Rafael, CA 94906
Tel: (415) 492-0230
Fax: (415) 492-0947

Juliet M. Brodie (SBN 248989)
jmbrodie@law.stanford.edu
STANFORD COMMUNITY LAW CLINIC
2117 University Avenue
East Palo Alto, CA 94303
Tel: (650) 725-9200
Fax: (650) 326-4162

I, David Breshears, CPA/CFF declare as follows:

## I. INTRODUCTION

1. The opinions expressed in this report are my present opinions subject to the following reservations. Amendments or additions to this report may be required as a result of developments prior to or at trial, including, but not limited to, the discovery of new evidence, expert discovery, and the testimony of any other witness in deposition or at trial.

2. In trial, I anticipate using selected exhibits attached to this report, documents reviewed in connection with their preparation, enhanced graphic versions of selected exhibits included in this report (i.e., redrafted to improve their presentation quality) and additional graphics illustrating concepts described in this report.

## II. ASSIGNMENT

3. I have been retained by counsel for the named plaintiffs and others similarly situated ("Plaintiffs") in the matter of Federico Vilchiz Vasquez, et al. vs. USM, Inc. dba USM Services, Inc.; Ross Stores, Inc. dba Ross Dress for Less; and Ross Stores, Inc. dba dd's DISCOUNTS ("Defendants"). Plaintiffs are janitorial workers who have provided the daily maintenance service at a Ross Dress for Less and/or dd's DISCOUNTS store in California at any time within four years prior to the filing date. Plaintiffs have alleged that they were routinely not paid minimum wage, due to the insufficient funds included in the contracts and agreements between Ross Stores, Inc. ("Ross") and USM, Inc. ("USM") as well as between USM and the Janitorial Subcontractors. I have been asked to determine if amounts paid by Ross to USM and/or by USM to the Janitorial Subcontractors allow for related hours worked to be compensated at the minimum wage rate required by law plus employer taxes, workers' compensation, and an administrative overhead fee.

4. I have been asked by counsel to analyze the contemporaneous business records maintained by Defendants, which provide information regarding the number of hours worked by Plaintiffs and the actual payments made for the services rendered by Plaintiffs in this matter.

## III. SUMMARY OF EXPERT QUALIFICATIONS

5. I am a Certified Public Accountant, licensed in the State of California, and Certified in Financial Forensics. I am currently a partner at Hemming Morse, LLP, CPAs, Forensic and Financial

Consultants. My work in the accounting profession includes experience as an auditor and as a consultant. My expert qualifications, including my testimony, are described in **Exhibit A** hereto.

6. I have consulted on and/or testified in over 120 matters involving wage and hour-related disputes, including those arising under California law. These matters have involved allegations of unpaid overtime, off-the-clock work, meal and rest break violations, employment misclassification, time shaving, and record keeping violations.

7. My firm has been compensated for my review and analysis in this matter at my standard hourly rate of $380 per hour. Others have assisted me in my work and my firm has been compensated for their work at their standard hourly rates.

## IV. EVIDENCE CONSIDERED

8. In undertaking my assignment, I considered information from a variety of sources, each of which is of a type that is reasonably relied upon by experts in my field. Those sources are identified throughout this report, as well as in **Exhibit B**.

9. I have been provided with documents which can generally be described as (a) Daily Janitorial Service Sign-Off Sheets ("Sign-Off Sheets")[1] produced by USM, (b) USM payment records,[2] and (c) Ross payment records.[3]

a. The Sign-Off Sheets contain, but are not limited to, the following information: store number, city and state, month and year, date, the number of daily housekeepers ("Janitors[4]") who worked each day of the month, and the Janitors' times in and out each day each day of the month.

---

[1] Identified as USM-00000705 – USM-00130916.

[2] CONFIDENTIAL_USM-00021745.xlsx and CONFIDENTIAL_USM-00021746.xlsx

[3] Identified as CONFIDENTIAL_USM-00019063.xls (supporting MS Excel file for Master Services Agreement effective July 21, 2008), CONFIDENTIAL_USM-00028238.xls (supporting MS Excel file for Second Amendment to Master Service Agreement, effective September 9, 2011), and CONFIDENTIAL_USM-00028350.xls (supporting MS Excel file for to Master Services Agreement effective May 1, 2013), along with the First Amendment to Master Services Agreement, effective September 25, 2008 (identified as CONFIDENTIAL_USM-0000541-546) and the Third Amendment to the Master Services Agreement, effective February 28, 2013 (identified as CONFIDENTIAL_USM-0000670-704).

[4] For purposes of this report, I have used the term Janitor(s) to represent the individual(s) actually performing the daily maintenance services. The term Janitorial Subcontractor(s) is used in reference to the entity who employs the Janitors.

b. The USM payment records [redacted]

c. The USM/Ross [redacted] Although records of actual contractual payments made by Ross to USM have not been produced, I assumed that Ross paid for each service the amount that it had agreed upon in its contract with USM. If additional information is later produced which provides a record of the actual payments from Ross to USM, on a store by store basis, I can update my calculations to account for any differences between the estimated monthly contract values and the actual payments made.

## V. SUMMARY OF OPINIONS

10. Based on my analysis of the contemporaneous documents available in this matter, I have prepared a summary of my findings which compares, on a "store month[6]" basis, the amount paid (by USM to Janitorial Subcontractors and by Ross to USM) each month for each store that received the daily maintenance service to the amount needed to cover the statutory minimum wage plus employer taxes, workers' compensation, and an administrative overhead ("True Minimum Labor Cost") for the

---

[5] [redacted]

[6] For purposes of this report, I have used the term "store month" to represent the work performed during a single calendar month at an individual store.

hours worked by Janitors (according the Daily Sign-Off Sheets) performing daily maintenance at each corresponding store in each corresponding month. To determine the daily number of hours worked each day at each store, I calculated the difference between times in and out multiplied by the number of daily Janitors. For the statutory minimum wage per hour of labor, I used the minimum wage for that jurisdiction at the time the work hours were recorded. For the amount needed to cover employer taxes, workers' compensation, and administrative overhead, I used a figure derived from public sources or provided by Plaintiffs' experts, Dr. Marc Bendick, Jr. or Chris Waldheim.

11. I determined that the amount USM paid to the Janitorial Subcontractors per labor hour for daily maintenance was less than the True Minimum Labor Cost in 5,843 of 6,396 store months analyzed. In other words, when I computed the total hours worked by Janitors performing daily maintenance at a particular store in a particular month, multiplied that total by the True Minimum Labor Cost per hour, and compared the cost to the amount that USM had paid the Janitorial Subcontractor for the particular service at the particular store during the particular month, I found that USM paid less than the True Minimum Labor Cost 91.35% of the time.

12. I also determined that the amount Ross contracted to pay USM for daily maintenance per labor hour was less than the True Minimum Labor Cost in 4,371 of 5,830 store months analyzed. In other words, when I computed the total hours worked by Janitors performing daily maintenance at a particular store in a particular month, multiplied that total by the True Minimum Labor Cost per hour, and compared the cost to the amount that Ross had agreed to pay USM for the particular service at the particular store during the particular month, I found that Ross contracted to pay USM less than the True Minimum Labor Cost 74.97% of the time.

13. See **Exhibit 1.1** for a summary of the potential violations by store and **Exhibit 1.2** for a detailed analysis of all 6,396 store months.

## VI. BASIS OF OPINIONS

14. I reviewed and summarized the daily number of hours worked and the number of daily Janitors per Sign-Off Sheet when the store number, month, and year were recorded. I am informed by counsel that these Sign-Off sheets represent the amount of time worked by Janitors performing

standard daily maintenance.[7] When a single daily entry within a monthly Sign-Off Sheet was incomplete or illegible, I have estimated the daily number of hours worked and the average number of daily Janitors based on averages of entries within the same monthly Sign-Off Sheet that were complete or legible.[8] When entire monthly Sign-Off Sheets were illegible, I have estimated the daily number of hours worked and the average number of daily Janitors based on averages of monthly Sign-Off Sheets for that store within the same year that were complete or legible. My Sign-Off Sheet summary covers 6,743 store months from December 2010 through November 2013. To account for potential outliers within the Sign-Off Sheet data, I have also excluded 337 additional store months from my analysis, which represent the top and bottom 2.5%, based on the total number of hours worked during the store month. After removing the top and bottom 2.5% the remaining 6,406 store months have been used as the basis of my analysis of the number of hours worked.

15. For the store months included in my analysis, the average monthly hours worked by Janitorial Subcontractors was approximately 125.03 hours per store per month.[9]

16. I have summarized, by store and by month, the amount that USM paid Janitorial Subcontractors for daily maintenance. I obtained these payment amounts from the entries in two of USM's three spreadsheets recording payments to Janitorial Subcontractors from December 2010 through November 2013.[10] In these spreadsheets, I used the payment entries labeled with work order codes [redacted]

17. During my review of USM's accounting data, I noted that payment amounts included

---

[7] Sign-Off Sheets noted as "Daily Porter" or "Porter" have been excluded from my analysis.

[8] If the daily hours estimates used in place of illegible daily hours entries are excluded from my analysis, the violation rate would be reduced by approximately 3.01%, from 91.35% to 88.34%.

[9] Based on the store months analyzed, the average number of daily hours worked by Janitorial Subcontractors is approximately 4.2 hours per day (e.g. 2 Janitors x 2.1 Hours per day).

[10] The Microsoft Excel spreadsheet (CONFIDENTIAL_USM-00028447 ) containing USM payment records for the period prior to December 2010 does not contain sufficient information to determine the time period, store, and type of services applicable to each payment.

[redacted] As such, I have prorated each check's deductions amongst that check's work order codes based on related gross amounts paid. If additional information is subsequently provided about these deductions and their related work order codes, I can update my analysis accordingly.

18. For the store months included in my analysis, the average monthly payment from USM to Janitorial Subcontractors was approximately $1,177.28 per store month.

19. I then compared the Sign-Off Sheet summary (as discussed in paragraph 14) to the USM payment summary (as discussed in paragraph 15) based on store number, month, and year to determine the store months with both Sign-Off Sheets and USM payment records. My comparison shows that 6,396 of the 6,406 store months have both Sign-Off Sheets and USM payment records.[11]

20. For each of the 6,396 store months, I divided the amounts paid by USM to the Janitorial Subcontractors per the USM payment summary by the number of hours worked per the Sign-Off Sheet summary within the month to determine the average hourly wage rate paid for all hours worked. For the store months included in my analysis, the average hourly rate paid by USM to Janitorial Subcontractors was approximately $9.73 per hour. I have prepared the attached graph (see **Exhibit 2.1**), which summarizes the distribution of the average hourly rates paid by USM to Janitorial Subcontractors. The graph shows that for the majority of store months, the average hourly rates paid by USM to Janitorial Subcontractors are below the applicable True Minimum Labor Cost per hour. The most frequent hourly rates paid by USM (e.g. $8.40 per hour, $8.80 per hour, $8.90 per hour, and $9.00) are all below the True Minimum Labor Cost. In fact, USM paid these four rates in 645 store

---

[11] The 6,396 store months relate to stores whose location is identified as California and to stores whose location could not be identified. If additional information is subsequently provided about these stores' locations, I will update my analysis accordingly.

months, while it paid rates in excess of the True Minimum Labor Cost in 520 store months.

21. I performed the same calculation for the average hourly wage rate contracted to be paid by Ross to USM. For each store the USM/Ross Monthly Pricing Reports indicated the amount that would be paid by Ross to USM per month for daily maintenance.[12] Based on the monthly amount paid by Ross to USM, I divided the monthly estimated amount paid by Ross to USM by the number of hours worked per the Sign-Off Sheet summary within the store month to determine the average hourly wage rate paid by Ross for all hours worked. For 5,830 of the 6,396 store months I was able to determine the average hourly wage rate paid by Ross to USM for all hours worked. For the store months included in my analysis, the average hourly rate contracted to be paid by Ross to USM was approximately $11.81 per hour. See **Exhibit 2.2** for a summary of the frequency of the average hourly rates contracted to be paid by Ross to USM.

22. I have been asked by counsel to compare, by store month, the average hourly wage rates paid (as discussed in paragraphs 20 and 21) to the True Minimum Labor Cost per hour. I calculated the True Minimum Labor Cost as described in the following paragraphs.

---

[12] The USM/Ross Monthly Pricing Report for [redacted] (USM-00019063) [redacted]

23. I first determined, by month and year from December 2010 through November 2013, the minimum hourly wage rates required by law for the cities of San Francisco and San Jose, and for the rest of California (i.e., not San Francisco or San Jose). The following table summarizes the minimum wage rate by location.

| Rate Start Date | California Minimum Wage | San Francisco Minimum Wage | San Jose Minimum Wage |
|---|---|---|---|
| Jan-10 | $ 8.00 | $ 9.79 | $ 8.00 |
| Jan-11 | $ 8.00 | $ 9.92 | $ 8.00 |
| Jul-11 | $ 8.00 | $ 9.92 | $ 8.00 |
| Jan-12 | $ 8.00 | $ 10.24 | $ 8.00 |
| Jan-13 | $ 8.00 | $ 10.55 | $ 10.00 |

24. I then calculated employer taxes under the two scenarios by multiplying the minimum hourly wage rates and the applicable FICA (Social Security) tax rate, FICA (Medicare) tax rate, FUTA (employer-paid) normal net tax rate, and SUTA standard new employer rate.[13] The legally required employer taxes collectively result in a 9.39% increase to the amount of payments that would need to be paid above the applicable minimum wage. I obtained the tax rates from publicly available sources.[14]

25. To calculate workers' compensation under Scenario 1, I multiplied the minimum hourly wage rates (as discussed in paragraph 20) by 15%. I have relied on the workers' compensation rates as determined by Plaintiffs' expert Chris Waldheim.

26. To calculate the administrative overhead fee under the two scenarios, I multiplied the minimum hourly wage rates by the combined administrative overhead rate of 40.00%.[15] I have relied on the administrative overhead fee rate as determined by Plaintiffs' expert, Marc Bendick, Jr., Ph.D. It is my understanding that the administrative overhead fee rate of 40.00% is comprised of 22.20% for

---

[13] FUTA and SUTA tax rates have been reduced by approximately 42% to account for the $7,000 cap on Unemployment Taxes [42% = $7,000 / ($8.00 per hour * 2,080 hours per year)]

[14] http://www.adp.com/tools-and-resources/compliance-connection/state-taxes.aspx

[15] It is my understanding that 25.61% workers compensation rate reflects the State Compensation Insurance Fund rate.

supervisory and administrative cost, 5.00% for supplies, 2.10% for liability insurance, and 10.70% for other overhead costs.

27. Based on the information described in paragraphs 23 through 26 above, I have prepared the following charts, based on geographic area, which summarize the True Minimum Labor Cost by applicable period.[16]

| | Effective Date | | | | |
|---|---|---|---|---|---|
| **Cost Component** | **Jan-2010** | **Jan-2011** | **Jul-2011** | **Jan-2012** | **Jan-2013** |
| California Minimum Wage | $ 8.00 | $ 8.00 | $ 8.00 | $ 8.00 | $ 8.00 |
| Taxes % | 9.42% | 9.42% | 9.33% | 9.46% | 9.33% |
| Workers Comp. % | 15.00% | 15.00% | 15.00% | 15.00% | 15.00% |
| Overhead % | | | | | |
| Supervision and Admin Personnel | 22.20% | 22.20% | 22.20% | 22.20% | 22.20% |
| Liability Insurance | 2.10% | 2.10% | 2.10% | 2.10% | 2.10% |
| Other | 10.70% | 10.70% | 10.70% | 10.70% | 10.70% |
| Profit | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Supplies | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% |
| Subtotal | 64.42% | $ 0.64 | $ 0.64 | $ 0.64 | $ 0.64 |
| Taxes, Workers Com., Overhead, Supplies, & Profit | $ 5.15 | $ 5.15 | $ 5.15 | $ 5.16 | $ 5.15 |
| **True Minimum Labor Cost** | **$ 13.15** | **$ 13.15** | **$ 13.15** | **$ 13.16** | **$ 13.15** |

28. Based on the analyses described above, I determined that the average hourly wage rate paid by USM is less than the True Minimum Labor Cost per hour in 5,843 of the 6,396 store months,

---

[16] The average minimum hourly wage rate required by law plus employer taxes, workers' compensation, and an administrative overhead fee for all store months analyzed was approximately $13.19 per hour when the higher minimum wage rates for San Francisco and San Jose are included. The $13.15 included in the table below does not take into account that San Francisco and San Jose have higher minimum wage rates. See **Exhibit 3** for a summary of the San Francisco and San Jose calculation of the True Minimum Labor Cost.

or 91.35%.[17] See **Exhibit 1.1** for a summary of the violations by Store and **Exhibit 1.2** for a detailed analysis of all 6,396 store months.

29. I also determined that the average hourly wage rate contracted to be paid by Ross to USM is less than the True Minimum Labor Cost per hour in 4,371 of the 5,830 store months, or 74.97% (see **Exhibits 1.1** and **1.2**).

30. I was also asked to determine, based on the average number of Janitorial hours per month, the approximate dollar value at which contracts must be funded in order to meet the True Minimum Labor Cost. By multiplying the average store month hours (125.03) by the average True Minimum Labor Cost per hour ($13.15 per hour), I have determined that, for store months with at least 125.03 hours of daily janitorial services, contracts below $1,644.56 would be underfunded.

31. Of the 6,396 daily sign-off sheets with usable data, 6,039 reflect store months when USM paid the Janitorial Subcontractors less than $1,644.56. For these 6,039 store months, I have performed the same analysis as described above. I found that in 5,734 or 94.94% of these store months, the amount USM paid the Janitorial Subcontractor was less than True Minimum Labor Cost given the hours worked at that store that month.

32. If it is determined that a different minimum level of funding should be used to calculate monthly insufficiencies, the same methodology described above can be used to determine the percentage of store months in violation. These records described above can also be used to determine the potential damages that may be due based on the findings of the court.

I declare under penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct. Executed at Walnut Creek, CA on October 24, 2014.

[signature]

David Breshears, CPA/CFF

---

[17] Including only the direct labor cost (i.e. wages, taxes, and workers' compensation insurance), the percentage of store months with potential underfunding would be 65.89% for all of the USM payments analyzed.