UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERICO VILCHIZ VASQUEZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>USM INC, et al.,<br><br>    Defendants. | Case No. 3:13-cv-05449-JD<br><br>**ORDER RE MOTIONS FOR FINAL SETTLEMENT APPROVAL AND ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 138, 139 |

This order resolves plaintiffs' unopposed motions for: (1) final settlement approval and certification of a settlement class, and (2) attorneys' fees, costs, and class representative service awards. Dkt. Nos. 138, 139. The Court granted preliminary approval of the proposed settlement on April 13, 2015. Dkt. No 134. The Court now grants the motion for final approval and grants in part the motion for fees, costs, and service awards.

## BACKGROUND

The key facts are discussed in the Court's preliminary approval order. Dkt. No. 134. In summary, plaintiffs are janitorial employees who worked in Ross Dress for Less and "dd's DISCOUNTS" stores in California from 2009 onward. *See* Dkt. No. 58. Since 2008, a Ross contractor, USM, had lead responsibility for janitorial services and delegated the work to smaller subcontractors. *Id.* ¶ 32. Plaintiffs allege that Ross and USM knowingly underfunded these janitorial subcontracts, resulting in a host of minimum wage, overtime, and other labor law and unfair competition violations. *Id.* ¶¶ 131, 133.

The parties have litigated this suit since September 2013. Dkt. No. 1, Ex. A. An initial motion to dismiss was denied on January 27, 2014, Dkt. No. 38, and plaintiffs filed for class certification on October 24, 2014. Dkt. No. 84-1. After the class certification motion was fully

briefed but before the Court had ruled, the parties reached a settlement in principle. Dkt. No. 117. In February 2015, the parties moved for preliminary approval of the settlement. Dkt. No. 121. After the parties agreed to make specified changes to the form and manner of notice that the Court proposed, *see* Dkt. Nos. 132, 133-1, 133-2, preliminary approval was granted on April 13, 2015. Dkt. No. 134.  The parties moved for final approval and attorneys' fees and costs in September 2015, and were heard by the Court on October 7, 2015.  Dkt. Nos. 138, 139, 141.  At the final approval hearing, the Court requested, and the plaintiffs have now submitted, supplemental briefing and declarations on the issue of the proposed incentive awards.  Dkt. No. 142.

The proposed final settlement is consistent with the preliminary settlement proposal already approved by the Court. *See* Dkt. No. 121-1, Ho Decl. Exhibit A ("Consent Decree"). Under the settlement agreement, defendants will pay $1,000,000 into a non-reversionary Settlement Fund, which will serve as the source for payments to Class Members, notice and administration costs of up to $125,000, and a Private Attorney General Act (PAGA) payment of $5,000 to the State of California. *Id.* at VII(A).  Class members will receive an automatic payment of between $50 and $250 (representing up to 20% of the net settlement fund), with additional funds distributed to Class Members who submit a timely and valid Claim Form (an additional 30% of the net settlement fund, up to an additional $575 per Class Member) and tax reporting and employment information substantiating their claim (the remainder of the net settlement fund).  The maximum amount receivable by any Class Member will be $16,500.  *Id.* at VII(C).  Any uncashed proceeds from the Settlement Fund will be distributed to several local nonprofits that specialize in assisting low-income immigrant workers.  *Id.* at VII(E).

In addition to monetary relief, the settlement requires USM to take concrete steps to ensure that janitors employed by its subcontractors receive minimum wage, overtime, workers' compensation, itemized wage statements and notice of their rights under the California Labor Code.  *Id.* at VIII.  Significantly, in addition to Ross being required to revise its master contract with USM to properly reflect the terms of Cal. Labor Code § 2810, USM will be held directly responsible for reviewing the wage and hour records of its subcontractors and making up any shortfall in either minimum wage or overtime pay.  *Id.* at VIII(A).  Based on the calculations of

2

their expert, David Breshears, plaintiffs estimate that these behavioral mandates represent a value to the class of more than $1.5 million over the next three years alone. Dkt. No. 139 at 2; Dkt. No. 125 ¶ 3.

In exchange for this consideration, the class members agree to release defendants from:

> any and all claims arising out of the facts as alleged in the Second Amended Complaint regarding the provision of Daily Maintenance Services at a Ross store in California in connection with the provision of a contract or agreement between USM and Ross for the provision of Daily Maintenance Services at a Ross store in California at any time from September 5, 2009 until February 10, 2015 including, but not limited to, any claim under any federal, state or local statute including, but not limited to the Fair Labor Standards Act; the California Business and Professions Code § 17200 *et. seq.*; any provision of the California Labor Code including, but not limited to, Labor Code § 2810; and any other federal, state or local law or ordinance relating to the payment of wages.

Dkt. No. 139 at 4; Consent Decree at VI(B).

This release will bind the following individuals, except (with respect to claims for individual monetary damages) those who opted out or failed to receive timely notice:

> The monetary relief Settlement Class: All persons who have provided Daily Maintenance Service at a Ross store in California in connection with the performance of a contract or agreement between USM and Ross for the provision of janitorial services from September 5, 2009 until February 10, 2015, except those who file a timely request to opt out of and be excluded from the monetary relief provisions of the Consent Decree.
>
> The injunctive relief Settlement Class: All persons currently providing Daily Maintenance Service at a Ross store in California in connection with the performance of a contract or agreement between USM and Ross for the provision of janitorial services.

Consent Decree at IV(A)-(C).

Plaintiffs report that notice has been provided consistent with the proposed settlement agreement and with the requirements of Rule 23(e)(1). Notice was mailed to 1,211 class members, out of which 314 notice packets were initially returned as undeliverable. Dkt. No. 139 at 9. As of the date of the plaintiffs' motion for final approval, only 171 notice packets remained undeliverable. *Id*. Notice was also distributed through Spanish-language media, a settlement website, USM (to current employees), non-profits serving low-wage janitorial workers in

California, and by phone to Class Members who had not yet submitted a claim form. Dkt. No. 139 at 9-10. Except for those who received notice through some other means and filed a timely Claim Form, the individuals whose notice packets were returned as undeliverable will not be bound by the settlement. Consent Decree at IV(C).

## DISCUSSION

### I.  FINAL APPROVAL OF CLASS ACTION SETTLEMENT

In the order granting preliminary approval, the Court found that the proposed settlement classes satisfied the requirements of Federal Rules of Civil Procedure 23(b)(2) and (b)(3). Dkt. No. 134 at 4. The Court also found that the proposed agreement was "fair, adequate, and reasonable" in light of the risks faced by the plaintiffs in further litigation. *Id*. at 4. This case has been vigorously defended by USM, and if they proceed to trial, the Court noted that plaintiffs will continue to face significant risks related to the ascertainability of the proposed classes, the reliability of the janitorial subcontractors' time sheets and other key pieces of evidence, and the ability of plaintiffs to substantiate the number of violations subject to the statutory damages provision of California Labor Code § 2810(g). *Id.* at 3. In particular, if defendants were to prevail on their interpretation of the applicability of § 2810(g), plaintiffs would only be entitled to approximately $1,200,000 in damages -- only marginally more than the $1,000,000 settlement fund. Based on these facts, the Court found that plaintiffs had made a reasonable choice in seeking to avoid such risks, especially in light of the significant relief afforded by the proposed settlement. *Id.* at 3-4.

These conclusions hold here at the final approval stage. The proposed settlement provides meaningful monetary and non-monetary relief to the settlement class. Each class member is guaranteed to receive an average of $728. Dkt. No. 139 at 1. The class members who continue to be employed by USM subcontractors will benefit from the non-economic relief provided by the Consent Decree, including the requirement that USM monitor its subcontractors for compliance and make up any shortfall in wages and overtime. *Id.* at 1-2. No objections were received during the 120-day notice period, and no Class Member has asked to opt out from the Class. Dkt. No. 139-4 ¶¶ 17-18. Lack of objection from the class members is a substantial factor in favor of final

4

1   approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.
2   2004) ("the absence of a large number of objections to a proposed class action settlement raises a
3   strong presumption [that] the terms of a proposed class settlement are favorable to the class
4   members"); *see also Churchill Vill., L.L.C.v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (listing
5   "the reaction of the class members to the proposed settlement" among the "non-exclusive"
6   settlement evaluation factors courts are to consider before granting approval). In addition to the
7   lack of objections during the notice period, no objections were raised at the hearing on the present
8   motions.

9   Consequently, the Court grants final approval of the proposed settlement, finally certifies
10  the injunctive and monetary relief settlement classes as proposed, and appoints Federico Vilchiz
11  Vasquez, Jesus Vilchez Vasquez, Ada Cañez, Emigdio Mendez, Candelaria Hurtado, and Evelia
12  Martinez as class representatives, and Goldstein, Borgen, Dardarian & Ho, Chavez & Gertler LLP,
13  Legal Aid of Marin, and the Stanford Community Law Clinic as class counsel.

14  **II.   FINAL APPROVAL OF ATTORNEYS' FEES AND COSTS**

15  Plaintiffs seek the Court's approval for payment of $1,102,000 in fees to class counsel, as
16  well as reimbursement of actual and expected litigation costs of $198,000. Dkt. No. 138 at 1.
17  Reasonable attorney's fees and costs are allowed under Federal Rule of Civil Procedure 23(h).
18  Where, as here, the plaintiff brings California state law claims, the Court looks to the state's law in
19  determining the reasonableness of the fees requested. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
20  1047 (9th Cir. 2002). California courts have repeatedly validated the lodestar method as a means
21  of determining reasonableness, particularly in circumstances where the fees are to be paid
22  separately and not from a common fund. *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26
23  (2000) (citing *Seranno v. Priest*, 20 Cal. 3d 25 (1977)). The lodestar method is particularly useful
24  when, as here, the relief obtained includes an injunction whose value will not be reflected in the
25  monetary portion of the settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.
26  1998).

27  In this case, plaintiffs note that the $1.1 million in fees represents only 0.46 of class
28  counsel's lodestar to date. Dkt. No. 138 at 1, 6. Although the fee award represents more than

1  50% of the total cash settlement in this case, *see* Dkt. No. 139 at 3, plaintiffs say that the fee
2  recovery only "represents 28.9% of the estimated constructive common fund when taking into
3  account the monetary benefit of Defendants' revised contracts and monitoring to ensure janitorial
4  subcontractors are paying minimum wage and agreement to pay minimum wage directly if it is
5  found that a subcontractor is not following the law." Dkt. No. 138 at 17.

6  Although somewhat on the high side, the requested fees are tolerable in light of the
7  challenges in this case, the fact that the fee award represents a negative multiplier on the billable
8  hours actually incurred by plaintiffs' counsel, *see* Dkt. No. 138 at 6, and that it will be paid
9  separately from, and will not be taken out of, the money due to the plaintiffs. The fee request is
10 adequately supported by the calculations plaintiffs have submitted. *See* Dkt. No. 138-1, 138-2,
11 138-3, 138-4. The fee request is approved.

12 Plaintiffs' counsel also seeks $198,000 in costs. Dkt. No. 121 at 8. The request is
13 unopposed and is approved.

14 **III.  SERVICE AWARDS**

15 Plaintiffs initially requested so-called "incentive awards" for the named plaintiffs in
16 amounts of between $1,000 and $5,000 to "compensate [the] class representatives for work
17 undertaken on behalf of class members." Dkt. No. 138 at 20. In response to concerns expressed
18 by the Court at the October 7, 2015 hearing, plaintiffs agreed to submit declarations substantiating
19 any unreimbursed expenses incurred by the class representatives. Dkt. No. 141. The declarations
20 submitted by the plaintiffs do not detail specific out-of-pocket expenses, but instead state that
21 "[a]ll of the class representatives are hourly minimum wage workers and could not work and were
22 not compensated when they took time to work on behalf of the class," and request "reimbursement
23 from the Settlement Fund for the time they spent on behalf of the class at the minimum wage
24 ($9/hour)." Dkt. No. 142 at 1.

25 The Court, following the Ninth Circuit, has often expressed skepticism of settlements
26 in which named plaintiffs do appreciably better than rank-and-file class members; settlements like
27 that pose a serious risk of collusive settlements and conflict within the plaintiffs' side of the case.
28 *See Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761-JD, 2014 WL 6065602, at *6 (N.D.

Cal. Nov. 12, 2014) ("Absent a particularized showing of expenses incurred or injury suffered by [the named plaintiff] (above and beyond those of the other proposed class members), an enhancement award is inappropriate."); *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 WL 5826335, at *6 (N.D. Cal. Nov. 10, 2012). But this is not a hard-and-fast rule, and courts in our Circuit may consider additional factors, including the amount of time and effort that plaintiffs have expended in pursuing the litigation, in determining whether a service award is appropriate. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). In light of plaintiffs' sworn representations about the number of unpaid hours that each class representative spent on the case, *see* Dkt. No. 142, the Court grants the plaintiffs' supplemental request that the claimed hours be compensated at a rate of $9 per hour. The Court awards payment, from the Settlement Fund, of $540 to Federico Vilchiz Vasquez; $405 to Jesus Vilchez Vasquez; $540 to Ada Cañez; $270 to Emigdio Mendez; $225 to Candelaria Hurtado; and $108 to Evelia Martinez.

## CONCLUSION

The Court grants final approval of class settlement, the requests for attorneys' fees and costs, and for additional payments to the named plaintiffs as provided herein. The Clerk is requested to close the case and terminate any pending matters.

**IT IS SO ORDERED.**

Dated: February 16, 2016

_____
JAMES DONATO
United States District Judge